# THE ATTORNEY GENERAL

## OF TEXAS

Gerald C. Mann
~~PRICE DANIEL~~

ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Geo. A. Hight
Chief Accountant
Board of County and District Road Indebtedness
Austin, Texas

Dear Sir:

Opinion Number O-3320

Re: Authority of Board under sub-
section (m) of House Bill 688,
Forty-sixth Legislature, to
purchase bonds at a premium
for cancellation and increase
the annual sinking fund require-
ment out of the interest saved
to absorb the premium paid.

We have your letter of July 17, in which you request
our opinion on the following question:

"Whether or not the Board has ample authority,
under the above quoted provision, to purchase
such bonds at a premium for cancellation and in-
crease the annual sinking fund requirement out
of the interest saved to absorb the premium on
bonds cancelled?"

The section of the law quoted in your letter, sub-
section (m) of Section 6 of House Bill 688, passed by the
Forty-sixth Legislature, Regular Session, 1939, reads as fol-
lows:

"The Board of County and District Road Indebt-
edness shall have and possess full authority to
invest all such sinking funds, including all future
sinking funds acquired in any manner whatsoever, in
any eligible obligations of the various political
subdivisions of this State, which mature within the
current biennium in which such securities are pur-
chased and where there is on hand a sufficient
amount of moneys or securities to the credit
of any one political subdivision to retire some
of its outstanding obligations, whether then
due or not. The Board of County and District
Road Indebtedness may if it deems it advisable,
purchase and cancel said obligations of such
particular political subdivisions, irrespect-
ive of maturity dates."

You have outlined the following example for our
consideration:

A county has outstanding $913,000 term bonds

maturing 1959 with no optional features. The annual sinking fund requirement on this issue is $23,075.00 of which the State pays 93.56%. There has accumulated in the State's portion of the sinking fund requirement of this issue since January 1, 1933 the sum of $189,300.73.

We think the following conclusion proper under the state of facts outlined. Each bond stands as a separate contract and by its terms promises the return of the principal amount plus interest until maturity at so much per annum. A term issue, such as is outlined, promises not only the return of the principal amount represented thereby but also a sum to be realized as income thereon. For example, a $1,000 bond bearing interest at 5% and maturing in 1959 would represent a promise to pay $50.00 each year for nineteen (19) years, that is, 1941 to 1959, or $950.00 plus the principal amount of $1,000. Therefore, the aggregate sum the borrower has pledged itself to pay is $1,950. There being no provision for prior payment it becomes certain that the debtor is liable for $1950 at the maturity date, 1959.

To purchase such a bond at any time prior to maturity it is only reasonable to assume that something more than par must be paid therefor. A consideration would be due for the seller's foregoing his right to exact the full amount represented by the contract appearing in the face of the bond. Such consideration is generally referred to as a premium but if it is purchased by the debtor for cancellation it would be more appropriate to call it a prepayment of interest.

In the instant case the State of Texas through your Board has undertaken to compensate the counties and defined road districts of the State for money expended in the construction of State highways and has allocated so much money each year toward the payment of a term issue which matures 19 years hence, or 1959. Pending that time the funds lie unused and the State pays interest at the given rate throughout those 19 years or so long as funds for this purpose are made available by succeeding legislatures. Clearly, the State's obligation to pay cannot extend beyond two years; therefore, if the Board pursuant to the above quoted statutes purchased for cancellation bonds maturing beyond the biennium, the premium or interest prepayment should not exceed the amount it would be obliged to pay under the contract for that biennium. In other words, using the example above cited, the Board would not be justified in paying a premium in excess of $100 per each $1,000 bond. This $100 represents interest at 5% for two years and is the maximum amount the State would be called upon to pay.

Each biennial appropriation provides both the interest and principal accruals for the succeeding biennium and we see no legal obstacle to the Board's purchasing for cancellation bonds eligible under the "Bond Assumption Act" and paying therefor a premium, so long as such premium does not exceed the funds made available for the particular bonds for the ensuing biennium.

Your attention is directed to the fact that the amount that can be legally expended by the Board would be in ratio to the portion that the State has undertaken to pay. The established percentage of eligibility of participation in the one-cent (1¢) gasoline tax allocated to the Board of County and District Road Indebtedness represents the maximum funds available for such purpose.

You are, therefore, advised that in our opinion the Board has ample authority to purchase such bonds at a premium for cancellation and increase the annual sinking fund requirement out of the interest saved to absorb such premium, so long as said premium does not exceed the amount actually appropriated for interest payments thereon.

Trusting that the foregoing fully answers your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By /s/ Clarence E. Crowe
Clarence E. Crowe
Assistant

APPROVED AUG. 9, 1941
/s/ Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

CEC-s:jrb

APPROVED OPINION COMMITTEE
BY RWK, Chairman